IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

KAREN SCHULTZ, on behalf of
herself and all others similarly
situated,                                                            No. 2:18-cv-00489-JFC

       Plaintiff

  v.

PATENAUDE & FELIX, A.P.C. and
CACH, LLC,

       Defendants.

### PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT

AND NOW, comes Plaintiff, Karen Schultz ("Schultz"), by and through her counsel, Jeffrey L. Suher, Esquire, and Dell, Moser, Lane & Loughney, LLC, and Clayton S. Morrow, Esquire, and Morrow & Artim, P.C., and files the within Response to Defendant Patenaude & Felix, A.P.C.'s ("P&F") Motion to Dismiss Plaintiff's Amended Complaint as follows:

### INTRODUCTION

Despite the seventeen (17) page brief filed on behalf of P&F, this is a simple case. P&F violated section 1692e(10) of the Fair Debt Collection Practices Act, 15 U.S.C. §1692 *et seq.* ("FDCPA") by sending a collection letter that is false, deceptive, or misleading because it directly contradicts 15 U.S.C. § 1692c(c).

### FDCPA

In enacting the FDCPA, Congress found that: "[t]here is abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors. Abusive debt collection practices contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy." 15 U.S.C. § 1692(a). Because of this,

Courts have held that, "the FDCPA's legislative intent emphasizes the need to construe the statute broadly, so that we may protect consumers against debt collectors' harassing conduct…" and that, " [t]his intent cannot be underestimated." *Ramirez v. Apex Financial Management, LLC*, 567 F. Supp.2d 1035, 1042 (N.D. Ill. 2000). The FDCPA encourages consumers to act as "private attorneys general" to enforce the public policies and protect the civil rights expressed therein. *Crabill v. Trans Union, LLC*, 259 F.3d 662, 666 (7th Cir. 2001).

The FDCPA is a strict liability statute. 15 U.S.C. § 1692k(a); *Allen ex rel. Martin v. LaSalle Bank, N.A.*, 629 F.3d 364, 368 n.7 (3d Cir. 2011) ("The characterization of the FDCPA as a strict liability statute is generally accepted.").  Because the FDCPA is a strict liability statute, "evidence of actual deception is unnecessary. *United States v. Nat'l Fin. Servs., Inc.*, 98 F.3d 131,129 (4th Cir. 1996).

The purpose of the FDCPA is to "eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692e. The FDCPA prohibits "debt collector[s]" from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt." Id. A debt collector who violates the FDCPA is liable for actual damages sustained, as well as additional damages (called "statutory damages") as the court may allow, but not exceeding $1,000. 15 U.S.C. § 1692k.

Courts analyzing FDCPA claims apply a "least sophisticated debtor" standard, which is lower than "simply examining whether particular language would deceive or mislead a reasonable debtor." *Brown v. Card Serv. Ctr.,* 464 F.3d 450, 454 (3d Cir. 2006) (quoting *Wilson v. Quadramed Corp.*, 225 F.3d 350,354 (3d Cir. 2000)) (internal quotation marks omitted).  As

the Third Circuit has articulated, this "lower standard comports with a basic purpose of the FDCPA… to protect 'all consumers, the gullible as well as the shrewd', 'the trusting as well as the suspicious', from abusive debt collection practices." *Id.* (internal citations omitted). When the debt collector's letter complies with the statute is determined objectively; the inquiry is whether an "unsophisticated consumer or debtor would be confused by the contents of the letter." *McKinney v. Cadleway Props., Inc.*, 548 F.3d 496, 503 (7th Cir. 2008).

## MOTION TO DISMISS STANDARD

The motion to dismiss standard under Federal Rule of Civil Procedure 12(b)(6) is set forth in *Ashcroft v Iqbal*, 556 U.S. 662 (2009). After *Iqbal* it is clear that "threadbare recitals of the elements of a cause of action , supported by mere conclusory statements do not suffice" to defeat a Rule 12(b)(6) motion to dismiss. *Id.* At 663; *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ethypharm S.A. France v. Abbott Labs.*, 707 F.3d 223, 231 n.14 (3d Cir. 2013) (citing *Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 262 n.27 (3d Cir. 2010)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Applying the principles of *Iqbal* and *Twombly*, the Third Circuit in *Santiago v. Warminster Twp.*, 629 F.3d 121 (3d Cir. 2010), set forth a three-part analysis that a district court in this Circuit must conduct in evaluating whether allegations in a complaint survive a 12(b)(6) motion to dismiss:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

*Id.* at 130 (quoting *Iqbal*, 556 U.S. at 675, 679). "This means that our inquiry is normally broken into three parts: (1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). *Tatis v. Allied Interstate, LLC*, 882 F.3d 422, 426 (3d Cir. 2018) (construing allegations in the complaint in the light most favorable to the non-moving party)

A complaint must do more than allege a plaintiff's entitlement to relief, it must "show" such an entitlement with its facts. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (citing *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234-35 (3d Cir. 2008)). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but has not 'shown' – 'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679. The "plausibility" determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

## ARGUMENT

To state a claim under the FDCPA, a plaintiff must allege that "(1) she is a consumer, (2) the defendant is a debt collector, (3) the defendant's challenged practice involves an attempt to collect a 'debt' as the Act defines it, and (4) the defendant has violated a provision of the FDCPA in attempting to collect the debt." *Tatis*, 882 F.3d at 427. Here, the parties only dispute the fourth element, i.e., whether the letter violated § 1692e(10) of the Act

### a. Schultz has sufficiently alleged a claim under section 1692e(10) of the FDCPA[1]

In order to understand Schultz's claim under section 1692e(10), it is first necessary to discuss what a consumer under the FDCPA must do if she or he wants a debt collector to cease communications. Section 1692c(c) is the operative subsection and provides:

> *If a consumer notifies a debt collector **in writing** that the consumer refuses to pay a debt or that the consumer wishes the debt collector to cease further communication with the consumer, the debt collector shall not communicate further with the consumer with respect to such debt, except - -*
>
> *(1) to advise the consumer that the debt collector's further efforts are being terminated;*
>
> *(2) to notify the consumer that the debt collector or creditor may invoke specified remedies which are ordinarily invoked by such debt collector or creditor; or*
>
> *(3) when applicable, to notify the consumer that the debt collector or creditor intends to invoke a specified remedy.*
>
> *If such notice from the consumer is made by mail, notification shall be complete upon receipt.*

(Emphasis added). Accordingly, the notice from the consumer to the debt collector to cease communication **must be in writing.**

P&F mailed Schultz an initial collection letter (the "letter") dated February 2, 2018, attempting to collect payment on an alleged defaulted debt (Amended Complaint ¶ 25. The letter is attached to the Amended Complaint as Exhibit "A.") The letter states in relevant part:

> *Please be advised that the above-referenced debt has been assigned to this firm to initiate collection efforts regarding your delinquent outstanding balances. If you wish to eliminate further collection action, please contact us at 800-832-7675 ext. 8200*

The letter is false, deceptive or misleading because it directly contradicts the in-writing requirement set forth in 15 U.S.C. § 1692c(c). Specifically, P&F is telling Schultz that she can eliminate further collection action by phone. This is false. Pursuant to § 1692c(c) the only way to eliminate further collection action is to do so in writing. An oral request does not trigger the

---

[1] Schulz agrees that there is no claim under 15 U.S.C. §1692c(c).

consumers right under the FDCPA. Since the letter is false, deceptive or misleading, it violates 15 U.S.C. § 1692e (10), which provides:

> *A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:*
>
> *(10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.*

In its brief, P&F fails to consider that the FDCPA was enacted in part to preclude false, deceptive or misleading representations. Advising a consumer that she or he can cease collection communications via a phone call is false, deceptive or misleading. 15 U.S.C. § 1692c(c) is clear. A request to a debt collector by a consumer to cease communications must be in writing.

The false, deceptive or misleading statement is material. By believing that the only way to cease collection activity is to call P&F, the least sophisticated debtor is exposing herself or himself to manipulation and harassment by speaking directly to a debt collector over the telephone, which could lead the least sophisticated debtor to paying a disputed debt or giving up valuable rights provided by the FDCPA. (Amended Complaint, ¶ 47). P&F's failure to properly instruct the least sophisticated debtor on how to cease collection activity would affect the least sophisticated debtor's decision-making with regard to requesting cessation of collection action. (Amended Complaint, ¶ 49).

While the FDCPA doesn't require a debt collector to advise the consumer on how to go about requesting cessation of collection activity, once P&F decided to include the subject sentence in its initial collection letter, the FDCPA requires that the sentence be truthful. P&F may try to argue that the sentence is merely an invitation to the consumer to call in order to pay the alleged debt or enter into a settlement. However, the sentence makes no mention of paying the debt etc. The consumer could reasonably read the sentence and come away thinking that she

6

or he could call P&F and request cessation of collection activity and her or his rights would be protected under the FDCPA. The letter certainly can be read to have two different meanings. It is well established that a collection letter is deceptive if it can reasonably read to have two or more different meanings, one which is inaccurate. *Caprio v. Healthcare Revenue Recovery Group, LLC,* 709 F.3d 142 (3d Cir. 2013). In addition, P&F may argue that it expanded the rights available to Plaintiff by not limiting the means which Plaintiff can cease collection communications. It does not matter that P&F would have honored any oral request. See *Bicking v. Law Offices of Rubenstein & Cogan, et al.,* 2011 U.S. Dist. LEXIS 48623 (E.D. Va.) *citing Nero,* 655 F.Supp. 2d at 206. A debt collector's statutory duty to cease collection communications does not arise until and unless the consumer makes the request in writing. Based on P&F's letter, the least sophisticated debtor may very well request cessation of debt collection communications orally and therefore, never trigger the collector's duty to cease communication.

### b.  Schultz is not attempting to "evade" the FDCPA's cap on statutory damages

P&F argues that Schultz is attempting to "evade" the FDCPA's cap on aggregate statutory damages in class action cases. This argument should be summarily dismissed. P&F fails to cite one case in support of this argument. Schultz is entitled to define the class as she sees fit. If P&F wants to challenge the class definition, the appropriate time to do so is at the class certification stage.

### c.  Schultz has Article III standing

P&F makes a last-ditch attempt to dismiss this class action by arguing lack of Article III standing. This action was originally filed in the Court of Common Pleas of Allegheny County,

Pennsylvania. It was P&F who filed the removal action and would have averred that Schultz had Article III standing.

In *St. Pierre v Retrieval-Masters Creditors Bureau, Inc.*, No. 17-1731 (3d Cir. 2018), the 3d Circuit found that a violation of the FDCPA can give rise to a concrete injury. A number of district courts in the Third Circuit have also addressed that question and found standing: *Fuentes*, 2017 U.S. Dist. LEXIS 48923, at *9 (citing *Thomas v. Youderian*, 2017 U.S. Dist. LEXIS 16585, at *20-21 (D.N.J. Feb. 3, 2017); *Carney v. Goldman*, 2016 U.S. Dist. LEXIS 177087, at *14 (D.N.J. Dec. 22, 2016); *Blaha v. First Nat'l Collection Bureau, Inc.*, 2016 U.S. Dist. LEXIS 157575, at *19 (D.N.J. Nov. 10, 2016). In fact, since *Spokeo* was decided, the overwhelming majority of courts that have faced Article III standing challenges in FDCPA cases… have determined that a violation of the FDCPA produces a "concrete injury". *Pisarz v. GC Servs., L.P.,* 2017 U.S. Dist. LEXIS 42880, at *12-13 (D.N.J. Mar. 24, 2017) (citing *Sullivan v. Allied Interstate, LLC*, 2016 U.S. Dist. LEXIS 170333 (W.D. Pa. Dec. 9, 2016); *Quinn v. Specialized Loan Servicing, LLC*, 2016 U.S. Dist. LEXIS 107299 (N.D. Ill. Aug. 11, 2016).

Specifically, in *Medina v. Allianceone Receivables Management, Inc.*, 2017 U.S. Dist. LEXIS 7325 (E.D. Pa. Jan. 19, 2017), the United States District Court for the Eastern District of Pennsylvania addressed the impact of *Spokeo* on a plaintiff's Article III standing under circumstances similar to those in this matter. In *Medina*, the plaintiff filed a "putative class action under the [FDCPA]." *Id.* at *1. The plaintiff alleged that the "defendant, a debt collector, sent a letter to him in which it sought to settle for $228.28 a debt of $341.97 owed by [the plaintiff] …" *Id.* "In the letter, defendant stated, among other things, 'Our client Department Store National Bank will report forgiveness of debt as required by IRS regulations.'" *Id.* The plaintiff in *Medina* claimed that "this statement is deceptive and misleading because, contrary to

the letter, the IRS reporting requirement is not mandatory under all circumstances where a debt or part of a debt is forgiven. *Medina*, 2017 U.S. Dist. LEXIS 7325, at *1-2. Rather, the plaintiff claimed that an exception "to the IRS reporting requirement… excludes the need to report where the forgiveness does not exceed $600.00." *Id.* at *2 (citing 26 C.F.R. § 1.6050P-19 (a)). According to the District Court, that "appears to be the situation here." *Id.*

The defendant in *Medina* moved to dismiss the amended complaint for lack of subject matter jurisdiction or in the alternative for judgment on the pleadings. *Id.* The District Court notes that "[i]n support of its motion to dismiss for lack of subject matter jurisdiction, defendant first argues that plaintiff does not have Article III standing. *Id.*

After a discussion of the relevant portions of *Spokeo*, which included the notation that "[t]he risk of real harm' can also satisfy the concreteness test," *Id.* at *3 (quoting *Spokeo*, 136 S. Ct. at 1549), the District Court turned to assess whether the plaintiff has established Article III standing. *Id.* at *3-4. The court began by stating that "[t]he overriding purpose of the FDCPA is 'to eliminate abusive debt collection practices by debt collectors.'" *Id.* at *3 (quoting 15 U.S.C. § 1692). "Those abusive debt collection practices," the District Court noted, "included the use of 'any false, deceptive, or misleading representation or means in connection with the collection of any debt.'" *Medina*, 2017 U.S. Dist. LEXIS 7325, at *3 (quoting 15 U.S.C. § 1692e). And, the court further stated that "[t]he FDCPA gives a consumer the right to sue for damages for any violation. *Id.* (citing 15 U.S.C. § 1692k).

With those principals in mind, the court then determined that "[t]he injury to the consumer alleged here is the false and misleading statement made by the debt collector in an effort to collect or settle the consumer's debt obligation." *Id*. The court noted that "[t]he FDCPA is designed to protect the consumer from the inherent harm caused when a debt collector, in

9

seeking to collect a debt, is not straight with the consumer but instead makes a false or deceptive statement to achieve its purpose." *Id.* Accordingly, "[t]he deceptive declaration in the letter about a requirement to report the consumer's resolution of the debt to the IRS creates a particularized and concrete injury, at the very least unnecessary fear and anxiety on the part of the consumer." *Id.* "While the harm may be intangible," the court continue, "it involves a *de facto* injury nonetheless. *Id.* at *3-4 The court stated that "[t]he FDCPA was enacted to provide redress for such a result." *Id.* at *4 (citing *In re Nickelodeon*, 827 F.3d at 273-74). As a result, the District Court held the plaintiff has "standing to bring this action." *Id.*

Like the plaintiff in *Medina,* Schultz alleges an injury based on a false and misleading statement made by P&F in an effort to collect the alleged debt. Therefore, Schultz has standing to bring this action.

If the Court concludes Schultz lacks Article III standing, then the case should be remanded back to state court and attorney fees awarded. The decision in *Mocek v. Allsaints USA Ltd.*, __ F. Supp. 3d __, 2016 WL 7116590 (Dec. 7, 2016) is illustrative. *Mocek* involved a federal claim under the Fair and Accurate Credit Transaction Act. The case was filed in state court, the defendant removed to federal court based on federal question jurisdiction, and immediately sought dismissal under *Spokeo*. The court remanded the case based on 28 U.S.C. § 1447(c), concluding that the parties were "aligned in the view" that the court lacked subject-matter jurisdiction. The court also awarded more than $58,000 in attorney fees, concluding that the defendant "tried to have it both ways by asserting, then immediately disavowing, federal jurisdiction…"

## CONCLUSION

For the reasons stated above, the Motion to Dismiss filed on behalf of P&F should be dismissed.

Respectfully submitted:

/s/ Clayton S. Morrow
Clayton S. Morrow

/s/ Jeffrey L. Suher
Jeffrey L. Suher
Attorneys for Plaintiff and the Class